IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| FURTRANS DENIZCILIK TICARET VE SANAYI AS, | § § § § | |
| Plaintiff, | § § | C.A. NO. 3:10-cv-00370 |
| v. | § § | (ADMIRALTY) |
| AUGUSTA DUE S.R.L., | § § § | |
| Defendant. | § § | |

## MOTION TO VACATE ATTACHMENT FOR LACK OF SUBJECT MATTER JURISDICTION

NOW COMES, Augusta Due S.R.L. as Claimant to the M/V COSTANZA M ("Claimant"), and files this, its Motion to Vacate Attachment on the basis that this Court lacks subject matter jurisdiction. In support thereof, Claimant respectfully shows as follows:

### PROCEDURAL POSTURE

1.   Plaintiff Furtrans Denizcilik Ticaret Ve Sanayi AS filed its Verified Original Complaint in this matter on September 14, 2010,[1] and an Order for the issuance of a warrant to attach the M/V COSTANZA M was entered on September 15, 2010.[2] The United States Marshal executed the warrant to attach the M/V COSTANZA M on September 15, 2010, and the vessel remains seized at the time of this filing.

2.   Claimant filed its Statement of Right or Interest on September 17, 2010,[3] wherein it made a claim to the M/V COSTANZA M under Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and averred that as of the time of the incident made the basis of this suit, it was the true and bona fide Owner of

---

[1]   Clerk's Document No. 1.
[2]   Clerk's Document No. 6.
[3]   Clerk's Document No. 8.

the M/V COSTANZA M, her engines, tackle, etc., and the owner of certain goods and chattels thereon.

3. Now Claimant moves the Court to vacate the attachment of the M/V COSTANZA M as it is required to do because this Court lacks subject matter jurisdiction.

## FACTS

4. Plaintiff's action is for an alleged breach of a contract to build a ship.

5. In December 2007, Plaintiff and Claimant entered into a contract to build a ship, known as the STROMBOLI M ("the Contract").[4] Due to numerous defects and non-compliance with the contractual specs, together with significant unrepaired damage suffered during the launching of that vessel, Claimant refused to accept delivery of the STROMBOLI M in February 2010. Based upon Claimant's refusal to accept delivery of the non-compliant vessel, Plaintiff has initiated the instant lawsuit alleging that Claimant is in breach of the Contract.[5]

6. The Contract contains the following choice of law clause:

**Law of the Contract**

This CONTRACT and all other agreements relating thereto shall be construed and interpreted under the laws of England.[6]

7. The Contract also contains an arbitration clause requiring that "arbitration shall be conducted at London under the laws of England and shall be arbitration with reasoned awards."[7]

8. Although Claimant is not the owner of the STROMBOLI M, a fact which is undisputed by the parties,[8] it does own at least two other vessels, known as the GINOSTRA M and the COSTANZA M. In February 2010, the GINOSTRA M was detained by Plaintiff in France in an attempt to secure their claim. However, Plaintiff's case in France was dismissed on two bases: 1) the ship construction contract is a contract for the sale of goods and was not a

---

[4] See Clerk's Document No. 2-2.
[5] Clerk's Document No. 1, ¶ 7.
[6] See Clerk's Document No. 2-2, page 28.
[7] Clerk's Document No. 2-2, page 28.
[8] See Clerk's Document No. 2-1, ¶ 12.

maritime claim, sufficient to support the detention of the vessel, which is consistent with U.S. law, and 2) because Claimant never owned the STROMBOLI M, the arrest of the GINOSTRA M was improper on the basis that the STROMBOLI M and the GINOSTRA M were not "sister ships."[9] As the French Court did not have jurisdiction and the relied upon Convention was inapplicable, the GINOSTRA M was released from detention in March 2010 and Plaintiff's French claims were dismissed.

9.   In another attempt to secure their alleged breach of contract claim, Plaintiff also sought the arrest of the COSTANZA M in Amsterdam, The Netherlands, in February 2010. Similar to the French action, the arrest in Amsterdam was also dismissed on the basis that the STROMBOLI M and the GINOSTRA M were not "sister ships" under the referenced Convention.[10] Plaintiff in neither its Complaint nor its application for attachment advised the Court of any of its unsuccessful and ill founded attempts to attach Claimant's property in these prior actions.

10.   In accordance with the arbitration provision of the Contract, Plaintiff initiated arbitration of its alleged breach of contract claim in London on February 15, 2010. In that action, Claimant has not only appeared, but also alleged a counterclaim against Plaintiff for breach of the Contract.

11.   Unable to maintain the arrest or attachment of Claimant's property in any other jurisdiction, Plaintiff again has sought to secure its alleged claim in this Court with the attachment of the COSTANZA M. For the reasons set forth herein, the CONSTANZA M must be released from attachment on the basis that this Court lacks subject matter jurisdiction to hear Plaintiff's complaint.

---

[9]   Both the French and Dutch arrests were based upon the International Convention for the Unification of Certain Rules Relating to the Arrest of Sea-going Ships, 1952, to which the United States is not a signatory. Article 3 of this Convention provides for the arrest of a vessel on which the claim arose and "any other ship which is owned by the person who was, at the time when the maritime claim arose, the owner of the particular ship in respect of which the claim arose."

[10]   See Footnote 9, *supra*.

## PROMPT POST SEIZURE HEARING

12. Rule E(4)(f) of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure provides in pertinent part, "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the Plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." *See also Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 159 (5th Cir. 1992) (same); *Vinmar Intern. Ltd. v. M/T Clipper MAKISHIO*, C.A. No. H-09-3829, 2009 WL 6567104, at *1 (S.D.Tex. Dec. 9, 2009) (Werlein, J.) (same). This provision was added to the Supplemental Rules to ensure that constitutional due process is afforded to owners of property which may be subject to arrest or attachment. Claimant hereby requests an <u>instanter</u> prompt post-seizure hearing as its property has been wrongfully attached.

13. At the prompt post seizure hearing, the "[p]laintiff must show by a preponderance of the evidence that it is entitled to a valid maritime lien, *Seatrade Group N.V. v. 6,785.5 Tons of Cement*, No. Civ. A. H-05-2771, 2005 WL 3878026, at *2 (S.D. Tex. Dec.6, 2005) (Rosenthal, J.), and is required to make a prima facie showing that it is entitled to the damages sought and secured by the arrest and attachment." *Clipper MAKISHIO*, 2009 WL 6567104, at *1.

## ARGUMENT AND AUTHORITY

**A. This Court lacks subject matter jurisdiction.**

    **i. Limited subject matter jurisdiction.**

14. The attachment of the M/V COSTANZA M must be vacated because this Court lacks subject matter jurisdiction. "Federal courts are courts of limited jurisdiction 'hav[ing] only the authority endowed by the Constitution and that conferred by Congress.'" *U.S. v. Hazlewood*, 526 F.3d 862, 864 (5th Cir. 2008) (*quoting Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981)). Subject matter jurisdiction is an issue of paramount concern, and should be addressed, *sua sponte* if necessary, at the inception of any federal action. *Moody v. Empire Life*

*Ins. Co.*, 849 F.2d 902, 904 (5th Cir. 1988). *See also Gaar v. Quirk*, 86 F.3d 451, 453 (5th Cir. 1996) (courts have the duty to raise the issue of jurisdiction *sua sponte*, even if the parties have not raised the issue themselves); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985) (same); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### ii.   The bases for subject matter jurisdiction.

15. Federal Courts have original subject matter jurisdiction over the following:

- federal question jurisdiction based upon 28 U.S.C. § 1331;
- diversity jurisdiction based upon 28 U.S.C. § 1332; or
- supplemental jurisdiction.

16. A district court has federal question jurisdiction when an action arises under the Constitution, laws, or treaties of the United States. U.S. Const. Art III, § 2; 28 U.S.C. § 1331; *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006). Federal courts do not automatically possess the authority to hear and determine every type of action conceivably authorized by the U.S. Constitution. *Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir. 1990). Rather, Article III specifies the outer limits of federal subject matter jurisdiction. *Id.* However, it is well known that Article III extends federal subject matter jurisdiction to "all cases of admiralty and maritime jurisdiction." Art. III, § 2, cl. 1. Congress granted admiralty jurisdiction to federal courts in the Judiciary Act of 1789. The current codification of admiralty jurisdiction is 28 U.S.C. § 1333.

17. Diversity jurisdiction requires that the amount in controversy exceed $75,000.00 and the dispute is between 1) citizens of different states, 2) citizens of a state and citizens or subjects of a foreign country, 3) citizens of different states when citizens or subjects of a foreign

country are additional parties, or 4) a foreign country as a plaintiff and citizens of a state or of different states. 28 U.S.C. § 1332.

18. Supplemental jurisdiction extends a federal district court's jurisdiction over other claims that are within the same case or controversy, as long as the court would have original jurisdiction in the case. 28 U.S.C. § 1367; *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 558 (2005). Thus, before a court can exercise supplemental jurisdiction, it must first have either federal question jurisdiction or diversity jurisdiction.

19. There is no question that this Court lacks diversity jurisdiction. Although the amount in controversy exceeds $75,000.00, no citizens of any state are parties to this lawsuit. Plaintiff is a business entity duly organized and existing under the laws of Turkey with its office and place of business at Mehmet Afkan Sok. No. 9, Kosuyolu, Istanbul, Turkey. Claimant is a business entity duly organized and existing under the laws of Italy with its office and place of business at Viale Gorizia 16A, 00198 Rome, Italy. Both parties are foreign entities. The courts of the United States have no jurisdiction of cases between foreign entities. *Montalet v. Murray*, 8 U.S. (4 Cranch) 46 (1807). Accordingly, this Court lacks subject matter jurisdiction based on diversity of the parties.

20. In fact, Plaintiff has only alleged that jurisdiction in this Court is proper based on 28 U.S.C. § 1333, admiralty jurisdiction. However, this Court lacks admiralty jurisdiction. The existence of a maritime contract ordinarily gives rise to admiralty jurisdiction. *See Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 22-23 (2004). However, it is black letter law, as has been admitted by Plaintiff in its Memorandum of Law [Clerk's Document No. 3, p. 2 ("The Complaint alleges admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and F.R. Civ. P. Rule 9(h) based on breach of a shipbuilding contract governed by English law which recognizes such a claim as "maritime." Vineall Dec. ¶ 31. Such contracts are not considered maritime contracts under U.S. general maritime law.")], that a contract for the construction or sale of a vessel is not

a maritime contract.[11] *People's Ferry Company of Boston v. Beers*, 61 U.S. 393, 402 (1857); *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 01*, 625 F.2d 44 (5th Cir. 1980). As such, this Court lacks admiralty jurisdiction, and Plaintiff's Complaint must be dismissed. *See J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96 (5th Cir. 1992) (Finding an absence of both admiralty and diversity jurisdiction, the court dismissed plaintiff's complaint for lack of subject matter jurisdiction.)

21. Although not alleged by Plaintiff, there is no other basis upon which federal question jurisdiction may exist. For example, although the Federal Arbitration Act (FAA) specifically provides for the validity and enforceability of written arbitration provisions in maritime transactions and, as a general rule, arbitration agreements are presumed valid and enforceable in admiralty, s*ee* 9 U.S.C. §§ 1-16; *Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528, 538-39 (1995), the FAA in and of itself does not confer subject matter jurisdiction upon a court. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n. 32 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise."); *Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 9 (1984) (same); *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 685 (5th Cir. 2001) ("A party may obtain relief in federal court under the FAA only when the underlying civil action would otherwise be subject to the court's federal question or diversity jurisdiction.").

22. Although this Court could be vested with subject matter jurisdiction under the Hague Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C.A. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the

---

[11] This topic is discussed in more detail *infra* at p. 9, ¶ 27 – p.11, ¶ 31.

courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."), for such subject matter jurisdiction to exist, Plaintiff must be seeking the enforcement of an arbitration award. *See URS Corp. v. Lebanese Co. for Development and Reconstruction of Beirut Central District SAL,* 512 F.Supp.2d 199, 208 (D.Del. 2007) ("After examining the plain language of the FAA and the New York Convention, the court concludes that it may only grant subject matter jurisdiction over actions to compel arbitration or to enforce an arbitral award."). Such is not the case. Indeed, arbitration has been commenced, but no award has been issued in the London arbitration proceeding. Plaintiff's cause of action herein is for alleged breach of contract, not to enforce an arbitration award. Therefore, subject matter jurisdiction is not proper based on the Hague Convention either. Indeed, there is no basis upon which federal question jurisdiction may exist.

23. Lastly, because this Court lacks diversity and federal question jurisdiction, it necessarily lacks supplemental jurisdiction.

### iii. Subject matter jurisdiction cannot be created by agreement of the parties.

24. Plaintiff's flawed argument is that because English law is the law of the Contract, English law governs any breach of the Contract, which under English law, allegedly gives rise to a maritime claim, and therefore, this Court is vested with admiralty jurisdiction. Thus, according to Plaintiff, the parties contractually agreed that the courts of the United States would be vested with subject matter jurisdiction based upon an interpretation of English law.

25. However, "it is well established in this circuit that parties cannot confer jurisdiction on a court by agreement." *U.S. v. Hazlewood*, 526 F.3d 862, 864 (5th Cir. 2008) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir.2001) ("It is true that subject-matter jurisdiction cannot be created by waiver or consent.")). Simply, a contractual agreement regarding jurisdiction will never vest a United States district court with subject matter jurisdiction.

    iv.    **Subject matter jurisdiction can never be created and a case must be dismissed at any stage of the proceedings when it is determined that it does not exist.**

26.    "Subject-matter jurisdiction cannot be created." *Howery v. Allstate Ins. Co.*, 243 F.3d at 919. Further, "[i]t is axiomatic that a district court may inquire into the basis of its subject matter jurisdiction at any stage of the proceedings." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). "'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to a court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1995) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). Thus, "[a] federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction." *Stanley v. Cent. Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir.1981) (internal citations omitted). Simply, Plaintiff's Complaint <u>must</u> be dismissed and the M/V COSTANZA M <u>must</u> be released from attachment because this Court lacks subject matter jurisdiction.

    v.    **It is black letter law that a contract for the construction or sale of a vessel is NOT a maritime contract.**

27.    It is a well settled rule that a contract for the construction of a ship or the sale of a ship is non-maritime, and not within the admiralty jurisdiction of any federal court. *See Thames Towboat Co. v. The Schooner Francis McDonald*, 254 U.S. 242 (1920); *People's Ferry Company of Boston v. Beers*, 61 U.S. 393, 402 (1857); *Kossick v. United Fruit Co.*, 365 U.S. 731 (1961); *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96 (5th Cir. 1992).

28.    Plaintiff has incorrectly argued that this fundamental concept of law has been altered by the U.S. Supreme Court's decision in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004). As this Court is no doubt aware, *Kirby* is "a maritime case about a train wreck," involving two bills of lading for the transportation of goods from Australia to Alabama. *Id.* at

18. While the goods safely reached the U. S. by ship, they were damaged after the train carrying them from Savannah to Huntsville derailed. *Id.* The ultimate issue before the Court was whether the railroad could take shelter under the liability limitations of either bill of lading. *Id.* at 22. However, before making that determination, the Court was required to decide whether the contracts at issue were maritime in nature. *Id.* at 29.

29.    The Court held that the bills of lading were maritime contracts. In support of its conclusion, the Court noted that both "[t]he boundaries of admiralty jurisdiction over contracts [are] conceptual rather than spatial," *id.* at 23, and that whether a contract is maritime " 'depends upon ... the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" *Id.* at 24.

30.    At least one court has held that *Kirby* "supports the demise" of the long standing rule that a contract for the construction of a ship or the sale of a ship is non-maritime, and not within the admiralty jurisdiction of any federal court. *See Kalafrana Shipping Ltd. v. Sea Gull Shipping Co. Ltd.*, 591 F.Supp.2d 505, 509 (S.D.N.Y. 2008). *Kirby*, however, had nothing to do with a contract for the sale of a ship, and thus it cannot be said to have explicitly or implicitly overruled well established authority that is directly on point. Simply, *Kalafrana* is an anomaly which has been greatly criticized, distinguished and never followed. *See Polestar Maritime Ltd. v. Nanjing Ocean Shipping Co. Ltd.*, 631 F.Supp.2d 304 (S.D.N.Y. 2009) ("[T]his Court cannot ignore binding Second Circuit precedent, unless it is expressly or implicitly overruled."); *Ocean Benignity Ltd. v. Ocean Maritime Co., Ltd.*, 606 F.Supp.2d 519, 522 (S.D.N.Y. 2009) (same); *Unicorn Bulk Traders Ltd. v. Fortune Maritime Enterprises, Inc.*, C.A. No. 08 CIV. 9710, 2009 WL 125751 at *1 (S.D.N.Y. Jan 20, 2009) (same); *Great Eastern Shipping Co. Ltd. v. Maritime Tankers and Shipping Co. Intern. Ltd.*, 631 F.Supp.2d 392 (S.D.N.Y. 2009) (same); *Aggelikos Prostatis Corp. v. Shun Da Shipping Group Ltd.*, 646 F.Supp.2d 330 (S.D.N.Y. 2009) (same).

31.     Regardless, the Fifth Circuit adheres to the well established principle that a contract for the construction of a ship or the sale of a ship is non-maritime, and not within the admiralty jurisdiction of any federal court. *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96 (5th Cir. 1992); *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht*, 625 F.2d 44, 47 (5th Cir. 1980). Furthermore, *Kalafrana* is certainly not binding precedent on this Court. Thus, this Court <u>must</u> dismiss Plaintiff's Complaint for lack of subject matter jurisdiction. Furthermore, English law, as agreed to be the applicable law for the interpretation of the Contract, is irrelevant as parties cannot contract or otherwise create subject matter jurisdiction.

**B.      U.S substantive law applies to determine the existence of a maritime claim for purposes of applying Rule B of the Admiralty Rules.**

32.     Contrary to that which Plaintiff has alleged, U.S. substantive law applies to determine the existence of a maritime claim for purposes of a Rule B attachment. Plaintiff relies on *Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd.*, 478 F.Supp.2d 532, 536-37 (S.D.N.Y.2007) in support of its argument that English law applies to determine the existence of a maritime claim. However, Plaintiff would have the Court believe that this is settled black letter law. In fact, this issue is hotly contested within the Southern District of New York. *See Beluga Chartering GMBH v. Korea Logistics Sys. Inc.*, 589 F.Supp.2d 325, 327 (S.D.N.Y. 2008) ("There is some disagreement within this District as to whether the question of the claim's further 'validity' is governed by federal law or the substantive law that will govern the underlying action."); *Naias Marine S.A. v. Trans Pacific Carriers Co. Ltd.*, No. 07 Civ. 10640, 2008 WL 111003, at *3 (S.D.N.Y. Jan. 10, 2008) (discussing whether U. S. federal law or English law should determine the validity of a claim for costs in defending an arbitration in London involving a charter party governed by English law); *Harley Mullion & Co. Ltd. v. Caverton Marine Ltd.*, No. 08 Civ. 5435, 2008 WL 4905460, at *3 (S.D.N.Y. Aug. 7, 2008) ("this Court believes that federal U.S. law applies to the determination at hand"); *Budisukma Permai SDN BHD v. N.M.K.*

*Products & Agencies Lanka (Private) Ltd.*, 606 F.Supp.2d 391, 395 (S.D.N.Y. 2009) ("the Court is persuaded that federal law should govern the determination of a Rule B attachment's validity.")

33. U.S. substantive law applies to determine the existence of a maritime claim for purposes of a Rule B attachment.[12] In order to maintain an attachment under Rule B, the plaintiff must, in addition to establishing that the defendant cannot be found within the district and that the defendant has property within the district, establish that it has a maritime claim. Under well established federal law, a contract for the construction of a ship or the sale of a ship is non-maritime and cannot constitute a maritime claim. *Thames Towboat Co. v. The Schooner Francis McDonald*, 254 U.S. 242 (1920); *People's Ferry Company of Boston v. Beers*, 61 U.S. 393, 402 (1857); *Kossick v. United Fruit Co.*, 365 U.S. 731 (1961); *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96 (5th Cir. 1992). Without the existence of a maritime claim, an attachment under Rule B of the Admiralty Rules must be vacated. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2nd Cir. 2006) ("a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E."); *Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 52 (2nd Cir. 2008) (same); *Indagro S.A. v. Bauche S.A.*, 652 F.Supp.2d 482, 485 (S.D.N.Y. 2009) (same).

34. Lastly, Claimant would note that this fundamental precept of U.S. law is not unique. As indicated *supra*, the French court refused jurisdiction of Plaintiff's claims and released the detained vessel on the basis that a contract for the construction or sale of a ship is non-maritime under French jurisprudence.

---

[12] Claimant has not addressed English law, but asserts that breach of a construction contract is not a "maritime claim" under English law, which in the unlikely event the Court needs to address this issue, Claimant reserves the right to present evidence and briefing in a subsequent Motion to Vacate.

## CONCLUSION

35. It has long been the rule that a contract for the construction or sale of a vessel in non-maritime and therefore not within the admiralty jurisdiction of any federal court. Without admiralty jurisdiction, there is no federal question jurisdiction. With no federal question jurisdiction, this Court lacks subject matter jurisdiction, which can never be created by agreement of the parties, or even fiat. Without subject matter jurisdiction, the Court must dismiss Plaintiff's Complaint.

WHEREFORE, PREMISES CONSIDERED, Claimant Augusta Due S.R.L. respectfully requests that the Court dismiss Plaintiff's Verified Original Complaint, vacate the attachment of the M/V COSTANZA M, and for such other and further relief both at law and in equity as Claimant may show itself to be justly entitled.

Respectfully submitted,

*William A. Durham /by permission mah*

William A. Durham
State Bar No. 06281800
S.D.TX. Adm. ID No. 4172
Mary Holmesly
State Bar No. 24057907
S.D.TX. Adm. Id No. 890192
20th Floor, Niels Esperson Building
808 Travis
Houston, TX  77002
(713) 225-0905 – Telephone
(713) 225-2907 – Fax

*Attorneys for Claimant, Augusta Due S.R.L.*

OF COUNSEL:

EASTHAM, WATSON, DALE & FORNEY, L.L.P.

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I forwarded a true and correct copy of the foregoing instrument to the following counsel of record on this the 20th day of September, 2010.

Michael K. Bell
Douglas J Shoemaker
BELL, RYNIKER & LETOURNEAU P.C.
5847 San Felipe
Ste 4600
Houston, TX 77057
Fax: 713-871-8844
Email: *dshoe@brlpc.com*

Jeremy J.O. Harwood
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10 174-0208
Fax: 917-332-3720
Email: *JHarwood@BlankRome.com*

_____
Mary A. Holmesly