IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| FURTRANS DENIZCILIK TICARET VE SANAYI AS,<br><br>            Plaintiff,<br><br>v.<br><br>AUGUSTA DUE S.R.L.,<br><br>            Defendant. | C.A. No. G-10-0370<br>Filed Under Rule 9(h)<br>Fed. R. Civ. P.<br><br><br>(ADMIRALTY) |

MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO VACATE AN ORDER OF
MARITIME ATTACHMENT AND GARNISHMENT
UNDER FED. R. CIV. P. RULE B OF
THE SUPPLEMENTAL RULES FOR CERTAIN
<u>ADMIRALTY AND MARITIME CLAIMS</u>

Jeremy J.O. Harwood
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: 212- 885-5000
and
Michael K. Bell
Douglas J. Shoemaker
BELL, RYNIKER & LETOURNEAU, P.C.
5847 San Felipe, Suite 4600
Houston, Texas 77057
Tel: 713-871-8822
Fax: 713-871-8844

ATTORNEYS FOR PLAINTIFF

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION ...................................................................................................1

ARGUMENT ...........................................................................................................1

POINT I ....................................................................................................................1

    THE COURT HAS SUBJECT MATTER JURISDICTION ...............................1

POINT II ...................................................................................................................4

    THE SUBSTANTIVE LAW OF THE CONTRACT DETERMINES
    IF FURTRANS HAS STATED A VALID PRIMA FACIE
    MARITIME CLAIM .........................................................................................4

    A.    THE SUPPLEMENTAL RULES ARE PROCEDURAL RULES,
            ACCORDINGLY THIS CIRCUIT AND OTHER CIRCUITS
            USE A CHOICE OF LAW ANALYSIS .......................................................5

        1.    Application Of The Substantive Law To Determine The
            Existence Of A Valid Maritime Lien To Sustain A Rule C
            Arrest ...................................................................................................5

        2.    Application Of The Substantive Law To Determine If There Is
            A Valid Maritime Claim In Rule B Attachment Cases Is
            Entirely In Accordance With The Principles For Determining
            The Existence Of A Valid Maritime Lien .............................................8

CONCLUSION ........................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**CASES**

Amstar v. S/S Alexandros,
 664 F.2d 904 (4th Cir. 1981) ................................................................................................6

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,
 460 F.3d 434 (2d Cir. 2006) ...............................................................................................4, 8

Belcher v. M/V Maratha Mariner,
 724 F.2d 1161 (5th Cir. 1984) ..............................................................................................5

Beluga Chartering GmBh v. Korea Logistics Systems Inc.,
 589 F. Supp. 2d 325 (S.D.N.Y. 2008) ...............................................................................9, 11

Bottiglieri di Navigazione SPA v. Tradeline LLC,
 472 F. Supp. 2d 588 (S.D.N.Y. 2007) ..................................................................................8

Budisukma Permai SDN BHD v. N.M.K.,
 606 F. Supp. 2d 391 (S.D.N.Y. 2005) .............................................................................11, 12

Castelan v. M/V MERCANTIL PARATI,
 No. 91-1351, 1991 U.S. Dist. LEXIS 6472 (D.N.J. May 8, 1991) ....................................10

Dresdner Bank AG v. M/V OLYMPIA VOYAGER,
 446 F.3d 1377 (11th Cir. 2006) ............................................................................................7

Dresdner Bank AG v. M/V OLYMPIA VOYAGER,
 463 F.3d 1210 (11th Cir. 2006) ............................................................................................7

Dresdner Bank AG v. M/V OLYMPIA VOYAGER,
 463 F.3d 1233 (11th Cir. 2006) ............................................................................................7

E.A.S.T. of Stamford, Conn. v. M/V ALAIA,
 876 F.2d 1168 (5th Cir. 1989) ..............................................................................................4

Garcia v. M/V Kubbar,
 4 F. Supp. 2d 99 (N.D.N.Y 1998) .......................................................................................13

Gulf Trading & Transp. Co. v. M/V HOEGH SHIELD,
 658 F.2d 363 (5th Cir. 1981) ................................................................................................6

Harley Mullion & co. Ltd. v. Caverton Marine Ltd.,
 No. 08 Civ. 5435, 2008 WL 4905460 (S.D.N.Y. Aug. 7, 2008) ....................................11, 12

Ice Flake Maritime Ltd. v. Westcoast AS,
 No. 07 Civ. 2002, 2007 U.S. Dist. LEXIS 75677 (S.D.N.Y. Oct. 11, 2007) .......................9

# TABLE OF AUTHORITIES
(continued)

Page

Lauritizen v. Larsen,
  345 U.S. 571 (1953) ............................................................................................. 6, 7

Liverpool and London S.S. Protection & Indemnity Assoc. Ltd. v. MV Queen of Leman,
  296 F.3d 350 (5th Cir. 2002) ..................................................................................... 6

Metron Communications, Inc. v. M/V Tropicana,
  No. 89-2460-CIV, 1992 U.S. Dist. LEXIS 22613 (S.D.Fla. Mar. 6, 1992) ............ 10

Murray Oil Products Co., Inc. v. Mitsui & Co. Ltd.,
  146 F.2d 381 (2d Cir. 1944) ...................................................................................... 3

Naias Marine S.A. v. Trans Pacific Carriers Co. Ltd.,
  No. 07 Civ. 10640, 2008 WL 111003 (S.D.N.Y. Jan 10, 2008) ............................. 11

Nais Marine S.A. v. Trans Pacific Carriers Co. Ltd.,
  No. 07 Civ. 10640, 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. Jan. 10, 2008) ..... 10, 12

OGI Oceangate Transp. Co. Ltd. v. BP Logistics PVT Ltd.,
  No. 06 Civ. 9441, 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. Jun. 26, 2007) ............ 9

Padre Shipping Inc. v. Yong He Shipping et al.,
  553 F. Supp. 2d 328 (S.D.N.Y. 2008) ..................................................................... 10

Penguin Maritime Ltd. v. Lee & Muirhead Ltd.,
  588 F. Supp. 2d 522 (S.D.N.Y. 2008) ....................................................................... 9

Precious Pearls Ltd. v. Tiger International Line Pte Ltd.,
  No. 07 Civ. 8325, 2008 U.S. Dist. LEXIS 58453 (S.D.N.Y. Jul. 31, 2008) ............. 9

Rainbow Line v. M/V Tequila,
  480 F.2d 1024 (2d Cir. 1973) .................................................................................... 6

Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.,
  478 F. Supp. 2d 532 (S.D.N.Y. 2007) ............................................................. passim

Stolthaven Houston, Inc. v. RACHEL B
  No. 08 Civ. 4327, 2008 U.S. Dist. LEXIS 55723 (S.D.N.Y. Jul. 17, 2008) ............. 9

T&O Shipping Ltd. v. Lydia Mar Shipping Co.,
  455 F. Supp. 2d 310 (S.D.N.Y. 2006) ....................................................................... 9

URS Corp. v. Lebanese Co. for Devel. & Recon. of Beirut Central District SAL,
  512 F. Supp. 2d 199, 208 (D. Del. 2007) .................................................................. 2

Vaden v. Discover Bank,
  129 S. Ct. 1262, 173 L. Ed.2d 206 (2009) ................................................................ 2

## TABLE OF AUTHORITIES
(continued)

Page

Vestoil Ltd. v. M/V M PIONEER,
   148 Fed. Appx. 898, 2005 U.S. App. LEXIS 20358 (11th Cir. 2005) ........................ 7

**STATUTES**

9 U.S.C. §1, et seq. ........................................................................................................ 2

9 U.S.C. § 201, et seq. ................................................................................................... 2

9 U.S.C. §208 ................................................................................................................ 2

28 U.S.C. §1331 ............................................................................................................ 4

28 U.S.C. §1333 ............................................................................................................ 4

9 U.S.C § 8 ............................................................................................................. 1, 3, 4

**OTHER AUTHORITIES**

G. Gilmore and C. Black, The Law of Admiralty § 1-12 at 35 (2d ed. 1975) ................ 5

## INTRODUCTION

Plaintiff FURTRANS DENIZCILIK TICARET VE SANAYI AS ("Furtrans") respectfully submits this memorandum of law in opposition to the motion filed September 20, 2010 ("Brief" or "Augusta Brief") of defendant, Augusta Due S.r.L. ("Augusta") seeking to vacate the order of maritime attachment and garnishment ("PMAG") issued by the Hon. Kenneth M. Hoyt pursuant to Rule B of the Supplemental Rules of the Federal Rules of Civil Procedure for Certain Admiralty and Maritime Claims ("Supplemental Rules") dated September 15, 2010.

Furtrans' claim is a maritime claim under the governing English law of the Contract.[1] That law determines, as discussed below, whether Furtrans has advanced a valid *prima facie* maritime claim to avail itself of Rule B's procedural right of attachment, as expressly permitted under 9 U.S.C § 8.

## ARGUMENT

## POINT I

## THE COURT HAS SUBJECT MATTER JURISDICTION

In its Brief, Augusta claims that "there is no basis upon which federal question jurisdiction may exist." (Augusta Brief, at 8 ¶ 22). It further claims that Furtrans "only alleged" admiralty jurisdiction. (Id., at 6, ¶ 19). Augusta is incorrect on both counts. Furtrans' complaint (¶ 1) specifically asserted jurisdiction under 9 U.S.C. § 8. Since Furtrans is a Turkish corporation, Augusta an Italian corporation, and the situs of arbitration is in London, The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517,

---

[1] Definitions, unless otherwise stated, are taken from the Memorandum of Law filed on September 14, 2010.

1

T.I.A.S. No. 6997, 330 U.N.T.S. 38 (1970), implemented by 9 U.S.C. § 201, *et seq.* (the "New York Convention" or "Convention") clearly applies.[2]

Under the Convention, 9 U.S.C. § 208, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* applies to the extent "not in conflict" - which it is not. Augusta's reliance on a Delaware decision that the Convention does not provide subject matter jurisdiction is mistaken.[3] In *Vaden v. Discover Bank, et al.*, 129 S. Ct. 1262, 173 L. Ed.2d 206, 217 n. 9 (2009) the Supreme Court specifically noted the difference between Chapter 1 of the FAA and "Chapter 2 of the FAA ... [which] does expressly grant federal courts jurisdiction ..." The Court further agreed with Vaden that "when Congress wants to expand [federal-court] jurisdiction, it knows how to do so clearly and unequivocally." *Id.*

Moreover, the United Nations Commission on International Trade adopted a "Recommendation" on July 7, 2006, specifically addressed article VII, paragraph 1 of the Convention, which in material part provides as follows:

> "RECOMMENDATION REGARDING THE INTERPRETATION OF ARTICLE II, PARAGRAPH 2, AND ARTICLE VII, PARAGRAPH 1, OF THE CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS, DONE IN NEW YORK, 10 JUNE 1958, ADOPTED BY THE UNITED NATIONS COMMISSION ON INTERNATIONAL TRADE LAW ON 7 JULY 2006 AT ITS THIRTY-NINTH SESSION[4]"
>
> \*   \*   \*
>
> *Recalling* successive resolutions of the General Assembly reaffirming the mandate of the Commission as the core legal body

---

[2] All three countries are signatories to the Convention.

[3] *URS Corp. v. Lebanese Co. for Devel. & Recon. of Beirut Central District SAL*, 512 F. Supp. 2d 199, 208 (D. Del. 2007).

[4] Issued in *Official Records of the General Assembly, Sixty-first Session, Supplement No. 17 (A/61/17)*, annex II.

within the United Nations system in the field of international trade law to coordinate legal activities in this field,

\* \* \*

*Convinced* that the wide adoption of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done in New York on 10 June 1958,[5] has been a significant achievement **in the promotion of the rule of law, particularly in the field of international trade,**

\* \* \*

*Taking into account* **article VII, paragraph 1, of the Convention, a purpose of which is to enable the enforcement of foreign arbitral awards to the greatest extent, in particular by recognizing the right of any interested party to avail itself of law or treaties offer a regime more favorable than the Convention,**

\* \* \*

*Taking into account* also the enactments of **domestic legislation, as well as case law, more favorable than the Convention in respect of** form requirement governing arbitration agreements, arbitration proceedings and the **enforcement of arbitral awards,**

*Considering that,* **in interpreting the Convention, regard is to be had to the need to promote recognition and enforcement of arbitral awards,**

\* \* \*

2. *Recommends also* that article VII, paragraph I, of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done in New York, 10 June 1958, should be applied to allow any interested party to avail itself of rights it may have, under the law or treaties of the country where an arbitration agreement is sought to be relied upon, to seek recognition of the validity of such an arbitration agreement. [bold emphasis added]

In *Murray Oil Products Co., Inc. v. Mitsui & Co. Ltd.*, 146 F.2d 381, 384 (2d Cir. 1944), Circuit Judge Learned Hand noted that "§8 allows a libellant in the admiralty to begin by

---

[5] United Nations, *Treaty Series*, vol. 330, No. 4739.

3

arresting the ship, or by foreign attachment" and held that "given that the Statute [the FAA] is confined to two kinds of claims: 'maritime transactions,' and transactions in interstate or foreign commerce":

> [w]e cannot conceive any reason for giving the remedy of attachment - and arrest - to the first class, and denying it to the second; such a distinction would impute to Congress the merest whimsy, and that too a whimsy which nothing in the text demands.

*See also, E.A.S.T. of Stamford, Conn. v. M/V ALAIA*, 876 F.2d 1168, 1173 (5th Cir. 1989) ("we conclude that prejudgment attachment under Section 8 – as an aid to arbitration – is manifestly not inconsistent with the aims of the Convention.") Here, subject matter jurisdiction exists, as alleged in the complaint, to take advantage of "law and treaties more favorable than the Convention" in respect of obtaining security for the London Maritime Arbitrators Association's award under 28 U.S.C. § 1331, by virtue of 9 U.S.C. § 8, and 28 U.S.C. § 1333.[6]

## POINT II

### THE SUBSTANTIVE LAW OF THE CONTRACT DETERMINES IF FURTRANS HAS STATED A VALID PRIMA FACIE MARITIME CLAIM

The standard for sustaining a Rule B attachment is for the plaintiff to establish the existence of a valid *prima facie* admiralty claim. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). Augusta has had ample opportunity to obtain an opinion from English counsel to challenge the Notice of Foreign Law and expert English law opinion of Nicholas Edward John Vineall Q.C. that the Contract and disputes under it give rise to

---

[6] Furtrans' failed attempts to obtain such security by way of "sistership-arrests" under a convention to which the United States is not a signatory is irrelevant to the issues before the Court. c.f. Brief, ¶9. Because Augusta has sought to cloud the issue of whether the dispute gives rise to maritime claims by way of reference to them, Furtrans has filed two declarations of foreign law, French and Dutch. Suffice to say that the Vineall Declaration, ¶ 13, made clear "No security has been provided in the arbitration or elsewhere by the Purchaser for the Claim."

4

Maritime Claims. Furtrans' English solicitors provided Augusta's English solicitors, at their request, a copy of the Vineall Declaration on or about September 16, 2010. Moreover, Augusta has retained two barristers, Timothy Salomon Q.C. and Charles Holyroyd, of 7 Kings Bench Walk, London, who are perfectly capable of providing a view of English law - if it differed from that of Mr. Vineall. The presumption must be that they concurred with his views. Augusta has, while denying the truth of that opinion (without any stated basis in fact or law), made the strategic choice of declining to submit any counter-statement of foreign law. (*See* Brief, at 12, fn. 12). It claims the right to do so "in a subsequent Motion to vacate." *Id.* The Supplemental Rules do not contemplate a series of attempts to vacate maritime attachments based on running different legal arguments that the defendant deliberately decides not to advance in its original challenge. Augusta has "placed its bet."

A.  **THE SUPPLEMENTAL RULES ARE PROCEDURAL RULES, ACCORDINGLY THIS CIRCUIT AND OTHER CIRCUITS USE A CHOICE OF LAW ANALYSIS**

  1.  **Application Of The Substantive Law To Determine The Existence Of A Valid Maritime Lien To Sustain A Rule C Arrest**

The admiralty treatise of G. Gilmore and C. Black, The Law of Admiralty § 1-12 at 35 (2d ed. 1975) states:

> In American admiralty law, the maritime lien is a necessary condition for success in the suit *in rem*. [citing *The Propeller Commerce*, 66 U.S. (1 Black) 578, 580 (1862); *The Rock Island Bridge*, 73 U.S. (6 Wall.) 213 (1867); *The Resolute*, 168 U.S. 437, 18 S.Ct. 112 (1897)].

Accordingly, any action *in rem* pursuant to Supplemental Rule C to enforce a maritime lien on a vessel must be premised on the existence of a valid maritime lien at the time that the action is filed. *See Belcher v. M/V Maratha Mariner*, 724 F.2d 1161, 1163, (5th Cir. 1984) ("a maritime lien on the vessel is a prerequisite to an action *in rem*"); *Amstar v. S/S Alexandros*, 664

5

F.2d 904, 908-909 (4th Cir. 1981) ("A maritime lien is an essential predicate for the arrest of a vessel in a private *in rem* action . . . . The arrest of the vessel in the proceeding *in rem* is to accomplish this end. 'The lien and the proceeding *in rem* are, therefore, correlative - where one exists, the other can be taken, and not otherwise.'" [citing *The Rock Island Bridge*, 73 U.S. 213, 215 (1867)]; *Rainbow Line v. M/V Tequila*, 480 F.2d 1024, 1028 (2d Cir. 1973) ("*in rem* jurisdiction in the admiralty exists only to enforce a maritime lien." [citations omitted].)

As Augusta's counsel is well aware, in Rule C arrest proceedings the existence of a maritime lien is determined by a choice of law analysis, if the contract does not provide for governing law. *See, Gulf Trading & Transp. Co. v. M/V HOEGH SHIELD*, 658 F.2d 363, 365-66 (5th Cir. 1981) (applying American law to determine the existence of a lien because "[n]o bunkering contract existed between Gulf and the Vessel's owner at any relevant time" and noting "[v]iewed solely as a contract dispute, the Vessel owner's arguments that English law should apply are persuasive [citing Restatement (Second) of Conflicts of Law, §188]); *See also, Lauritizen v. Larsen*, 345 U.S. 571, 583-592 (1953) (tort claim under Jones Act). If the applicable substantive law does not provide a maritime lienn the plaintiff cannot assert the existence of a valid maritime lien to permit a right of arrest that might have arisen if the contract or claim was governed by U.S. maritime law. And, vice versa.

In *Liverpool and London S.S. Protection & Indemnity Assoc. Ltd. v. MV Queen of Leman*, 296 F.3d 350, 355 (5th Cir. 2002) the Court held:

> Indeed, it would be anomalous to refuse to honor the parties' choice of law in the P&I rules as it applies to maritime liens.
>
> \*    \*    \*
>
> We therefore conclude that in this case the P&I rules call for the application of United States substantive law to determine the existence of maritime liens.

6

In *Vestoil Ltd. v. M/V M PIONEER*, 148 Fed. Appx. 898, 2005 U.S. App. LEXIS 20358 (11th Cir. 2005), Vestoil asserted a maritime lien and arrested defendants' vessel in Florida pursuant to Supplemental Rule C. The district court applied the *Lauritizen* factors to determine that Greek law applied to the validity of the alleged lien and "then found that Greek law does not recognize a maritime lien for the provision of necessaries ..." 148 Fed. Appx., at 899. The Eleventh Circuit held:

> Because Greek law does not recognize a maritime lien created by agreement of the parties, Vestoil does not have a valid maritime lien ...[t]therefore, the district court lacked in rem jurisdiction over the [vessel] and properly dismissed Vestoil's Rule C complaint.

Id. at 901. *See also, Dresdner Bank AG, et al. v. M/V OLYMPIA VOYAGER*, 463 F.3d 1233, 1237 (11th Cir. 2006) (upholding district court's dismissal of in rem tort claims against vessel for fraud in the inducement and negligent misrepresentation were governed by Greek law and "could not possibly give rise to a maritime lien"); Dresdner Bank AG, et al. v. M/V OLYMPIA VOYAGER, 446 F.3d 1377, 1384 (11th Cir. 2006) (reversing District Court's application of U.S. law to sustain a Greek travel agency's claim of a maritime lien for necessaries because "[n]o provision of Greek law provides for such a lien."); Dresdner Bank AG, et al. v. M/V OLYMPIA VOYAGER, 463 F.3d 1210, 1218 (11th Cir. 2006) (affirming District Court's application of United States' law, in the absence of a signed contract providing for English law, to find a priority "maritime lien for necessaries" superior to the preferred ship mortgage.)

The right of arrest under Supplemental Rule C premised on the existence of a valid maritime *lien* is no different to Supplemental Rule B's right of attachment, premised on a valid maritime *claim*: both are procedural rules and require, in the absence of a contract providing the answer, a choice of law analysis to make the determination of "validity." The Fifth and Eleventh Circuit's decisions dismissing arrests for lack of a valid maritime lien under applicable foreign

7

substantive law are indistinguishable from the reasoning to be applied in determining, after a choice of law analysis, whether a valid maritime claim under Rule B exists.

    2.    **Application Of The Substantive Law To Determine If There Is A Valid Maritime Claim In Rule B Attachment Cases Is Entirely In Accordance With The Principles For Determining The Existence Of A Valid Maritime Lien**

District Judge Haight, one of New York's most distinguished admiralty judges, considered in *Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp.2d 532, 536 (S.D.N.Y. 2007), Sun United's motion to vacate a Rule B attachment on the basis that Sonito had failed to satisfy the *Aqua Stoli* requirements. He noted at the outset, "[n]either Rule B nor any of the Supplemental Rules create a valid prima facie admiralty claim. Rather the Supplemental Rules fashion procedures by which a valid maritime claim may form the basis for a writ of maritime attachment." 478 F. Supp.2d at 536. He then held:

> The existence *vel non* of a valid maritime claim for purposes of a Rule B writ of attachment **turns upon the applicable substantive law, in this case the law of contract**. And that leads to a consideration of English law because, as noted *supra*, the parties agreed in the charter party that it "shall be governed by and construed in accordance with English law."

Id. at 536-37. [footnote omitted, emphasis added].

After reviewing various decisions in which the prematurity of an indemnity claim had led to *vacatur* of the attachment because the claim was "not ripe under English law"[7] or because that issue "will be decided under English law in the arbitration,"[8] Judge Haight considered the "core question" was "governed by English Law" and held, accordingly, that Sonito had not "carried its burden of showing at the time of the attachment it had a valid maritime claim ..." *Id.* at 543.

---

[7]    *Bottiglieri di Navigazione SPA v. Tradeline LLC*, 472 F. Supp.2d 588 (S.D.N.Y. 2007).

[8]    *T&O Shipping Ltd. v. Lydia Mar Shipping Co.*, 455 F. Supp.2d 310, 316 (S.D.N.Y. 2006).

In *Ice Flake Maritime Ltd. v. Westcoast AS*, No. 07 Civ. 2002, 2007 U.S. Dist. LEXIS 75677, at *1 (S.D.N.Y. Oct. 11, 2007), a defendant moved to vacate the Rule B attachment on the basis that the plaintiff did not have a valid admiralty claim for economic losses under U.S. law. Judge Castel held that, "without prejudging the choice of law analysis," the "Plaintiff has made a plausible claim that Norwegian law will apply and economic losses are recoverable under that jurisdiction's law if there is negligence ..." The attachment was upheld because "I comfortably conclude that the plaintiff has asserted a valid prima facie admiralty claim." *Accord Precious Pearls Ltd. v. Tiger Int'l Line Pte Ltd.*, No. 07 Civ. 8325, 2008 U.S. Dist. LEXIS 58453 (S.D.N.Y. Jul. 31, 2008) (failure to state a valid maritime claim under English law). *See also Penguin Maritime Ltd. v. Lee & Muirhead Ltd.*, 588 F. Supp. 2d 522 (S.D.N.Y. 2008) (plaintiff established a prima facie valid maritime claim under Indian law for breach of maritime contract and maritime tort); *Beluga Chartering GmBh v. Korea Logistics Systems Inc.*, 589 F. Supp. 2d 325 (S.D.N.Y. 2008) (defendant failed "to demonstrate any legal infirmity in Beluga's claim under either English or federal admiralty law."); *Stolthaven Houston, Inc. v. RACHEL B*, No. 08 Civ. 4327, 2008 U.S. Dist. LEXIS 55723 (S.D.N.Y. Jul. 17, 2008) (applying Norwegian and U.S. law to determine existence of a bare boat charter that deprived plaintiff of a valid maritime claim); *OGI Oceangate Transp. Co. Ltd. v. BP Logistics PVT Ltd.*, No. 06 Civ. 9441, 2007 U.S. Dist. LEXIS 46841, at *4 (S.D.N.Y. Jun. 26, 2007) ("[w]ithout an understanding of the applicable law, the Court is unable to determine whether [plaintiff] has made a prima facie claim."); *Padre Shipping Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328, 333-34 (S.D.N.Y. 2008) (Plaintiff "has made a sufficient showing that Chinese law will govern and that the complaint states a valid maritime claim under that law." [citing *Ice Flake* and *Carbotrade*]); *Metron Communications, Inc. v. M/V Tropicana*, No. 89-2460-CIV, 1992 U.S. Dist. LEXIS

22613, at *4, (S.D.Fla. Mar. 6, 1992) (disposition of *in rem* claim depended on whether Greek or American law applied to determine whether maritime lien existed); *Castelan v. M/V MERCANTIL PARATI*, No. 91-1351, 1991 U.S. Dist. LEXIS 6472, at *4, (D.N.J. May 8, 1991) (plaintiff had no maritime lien under English law, and therefore no right to proceed *in rem*).

In *Nais Marine S.A. v. Trans Pacific Carriers Co. Ltd.*, No. 07 Civ. 10640, 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. Jan. 10, 2008), Nais' Rule B action was for $250,000 for estimated costs it expected to be awarded in defending a claim in London arbitration, for which it had provided security, including for "costs" in the same amount, in an earlier Rule B action by Trans Pacific, which had been dismissed upon the posting of security. Trans Pacific moved to vacate the attachment "on the ground that this Court has no subject matter jurisdiction over Nais's claim for costs and fees." *Id.* at *5. Trans Pacific argued that the "court lacks subject matter jurisdiction because Nais's claim is for legal defense costs and not a maritime claim" under English law. *Id.* at *7. Judge Leisure ruled that under neither English nor American law would Nais' "costs" claim be a "maritime claim" so that it "failed to meet its burden of showing that maritime or admiralty jurisdiction exists" so that the motion to dismiss for lack of subject matter jurisdiction was granted.

This body of case law, from one of the busiest Rule B district courts, fully supports the position that "the existence *vel non* of a valid maritime claim ... turns upon the applicable substantive law, in this case the law of the contract."

Despite this body of persuasive authority, Augusta claims that the existence of a valid maritime claim is not determined, in this case, by the English law of the Contract, but by substituting U.S. law. Taken to its logical (if absurd) conclusion, this would mean that a claim time-barred (based say on a contractual six month time-bar) or otherwise extinguished under the

10

law of the contract could be considered "valid" and given new life if preserved under American law (based say the one year COGSA provision).

August argues at length that it is "black letter [US] law that a contract for the construction or sale of a vessel is NOT a Maritime contract." (Brief, at ¶¶ 27-31, emphasis in original). This is undisputed by Furtrans. (Furtrans' PMAG Brief at 2) ("That Vexed question does not arise here.") This issue was specifically acknowledged in Furtrans' brief, as presented to Judge Hoyt well in advance of his consideration of the order of attachment.

Further, Augusta's assertion that "Plaintiff would have the court believe that this [application of the choice of law test to determination of the existence of a Maritime claim] is settled black letter law" and "[i]n fact, this issue is hotly contested" in the S.D.N.Y. is misplaced.*

Judge Sweet's stated in *Beluga* that there is "some disagreement," citing *Harley Mullion* and *Sonito*, but failed to make a choice of law determination – dismissing the indemnity claim, and attachment, as "unripe." In *Nais*, as noted above, Judge Leisure considered under both English and American law in determining there was no valid maritime claim. In *Harley Mullion,* Judge Jones reasoned against conducting a choice of law analysis because "challenge[rs] would be routinely required to litigate issues of foreign law" and "[t]his sort of detailed examination is inappropriate at a Rule 4(E) hearing ..." without discussion of Rule C arrests and exactly the same requirement at Rule 4(E) hearings in respect of them. *Id.* at *2. In *Budisukma*, Judge Marrero held, "having considered the [English Law] experts' declarations," that plaintiff stated

---

\* Citing *Beluga Chartering GMBH v. Korea Logistics Sys. Inc.*, 589 F.Supp.2d 325, 327 (S.D.N.Y. 2008); *Naias Marine S.A. v. Trans Pacific Carriers Co. Ltd.*, No. 07 Civ. 10640, 2008 WL 111003, at *3 (S.D.N.Y. Jan 10, 2008); *Harley Mullion & co. Ltd. v. Caverton Marine Ltd.*, No. 08 Civ. 5435, 2008 WL 4905460, at *3 (S.D.N.Y. Aug. 7, 2008); *Budisukma Permai SDN BHD v. N.M.K.*, 606 F. Supp.2d 391, 395 (S.D.N.Y. 2005).

11

"a valid maritime claim under English law" so that "even if English law were to apply, [Plaintiff] has a valid maritime claim" to permit the Rule B attachment. *Id.* at 397. The suggestion that the principle of conducting a "choice of law analysis" is "hotly contested" in the Southern District of New York, based on one contrary and disputable decision, premised on convenience, is wrong.

The inescapable logic of Judge Haight's conclusion in *Sonito*, as stated in footnote 2, was founded on his familiarity with Rule B's corollary, Rule C in respect of arrest - as discussed above. He explained:

> **The same principle applies to *Supplemental Rule C's* provisions in an in rem action** for the arrest of a vessel or other property to enforce a maritime lien. **The existence *vel non* of the maritime lien sought to be enforced is determined by the applicable substantive law, not by the procedures contained in Rule C**. *See, e.g., Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla*, 966 F.2d 613, 615 (11th cir. 1992) ("Rule C(1)(a) is procedural and sets forth the means to file an *in rem* action to enforce a maritime lien .... However, maritime liens are not created by *Rule C*. Instead, they are an aspect of substantive, rather than procedural maritime law. The contract agreed to by the parties in the present case states that English law shall govern .... Therefore, English substantive maritime law governs this dispute."). The Eleventh Circuit, affirming the district court, held that the English law governing the ship repair contract in suit did not create a right "equivalent to an American maritime lien," and concluded: "Because a maritime is a prerequisite for an action *in rem* under Rule C(1)(a), the district court lacked jurisdiction over the Camilla." *Id.* at 617. Similarly in the case at bar, a presently existing valid maritime claim under substantive English law is a prerequisite for Sonito's action *in personam* with writ of attachment under Rule B.

478 F. Supp.2d at 536, n. 9 (emphasis added)

Of course, had the Eleventh Circuit applied U.S. maritime law rather than English law, it would have sustained the maritime lien to permit the arrest. *See Garcia v. M/V Kubbar*, 4 F. Supp. 2d 99, 103 (N.D.N.Y 1998) ("courts which find that foreign law applies in a maritime

12

action must apply that law to determine if a valid maritime lien exists and an in rem proceeding may thereby continue.")

## CONCLUSION

Plaintiff respectfully requests that the Court deny Augusta's motion and grant such other relief as is fair and equitable and as requested herein.

Dated:  Houston, Texas
        September 23, 2010

                                  Respectfully submitted,

                                  /s/ Jeremy J.O. Harwood
                                  Jeremy J.O. Harwood*
                                  New York State Bar No. 2270387
                                  **Blank Rome LLP**
                                  The Chrysler Building
                                  405 Lexington Avenue
                                  New York, NY 10174-0208
                                  TEL: 212-885-5149
                                  FAX: 917-332-3720
                                  * Admitted Pro Hac Vice

                                  and

                                  **Michael K. Bell**
                                  TBA No. 02081200
                                  Fed. ID 5085
                                  **BELL, RYNIKER & LETOURNEAU, P.C.**
                                  5847 San Felipe, Suite 4600
                                  Houston, Texas  77057
                                  TEL: 713-871-8822
                                  FAX: 713-871-8844

                                  Attorneys for Plaintiff
                                  **FURTRANS DENIZCILIK TICARET VE SANAYI AS**

Of Counsel:
**Douglas J. Shoemaker**
TBA No. 00788406
Fed. ID 16854
**BELL, RYNIKER & LETOURNEAU, P.C.**